1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JESUS VILLALBA RODRIGUEZ,              No.  1:15-cv-01788-AWI-JLT (HC)

12                 Petitioner,              **FINDINGS AND RECOMMENDATION**
                                            **TO DENY PETITION FOR WRIT OF**
13          v.                              **HABEAS CORPUS**

14   SCOTT FRAUENHEIM, Warden,[1]           **[TWENTY-ONE DAY OBJECTION**
                                            **DEADLINE]**
15                 Respondent.

16

17          On May 30, 2013, Petitioner was sentenced to an indeterminate sentence of 25 years-to-

18   life plus 24 years for his conviction of multiple counts of forcible lewd acts on a child and sexual

19   intercourse with a child ten years of age or younger.  In this action, Petitioner claims he lacked

20   notice of the charges based on alleged variances between the information, jury instructions, and

21   verdict forms.  He also claims there was insufficient evidence supporting his convictions on

22   counts five and six.  The Court finds that the state court rejection of these claims was not contrary

23   to, or an unreasonable application of, Supreme Court precedent and recommends the petition be

24   **DENIED.**

25   **I.       PROCEDURAL HISTORY**

26          Petitioner was convicted in the Tulare County Superior Court on May 30, 2013, of:

27   _____

28   [1] Per Respondent's request and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Scott Frauenheim is
     substituted as Respondent in place of the People of the State of California.

                                                    1

1  forcible lewd act upon a child, to wit, penis to anus (Count 1, Cal. Penal Code § 288(b)(1));

2  sex/sodomy with a child ten years of age or younger (Count 2, Cal. Penal Code § 288.7(a));

3  forcible lewd act upon a child, to wit, penis to vagina (Count 3, Cal. Penal Code § 288(b)(1));

4  forcible lewd act upon a child, to wit, hand to mouth (Count 4: Cal. Penal Code § 288(a));

5  forcible lewd act upon a child, to wit, hand on buttocks (Count 5: Cal. Penal Code § 288(b)(1));

6  and forcible lewd act upon a child, to wit, penis to vagina (Count 6: Cal. Penal Code § 288(b)(1)).

7  (Pet., at 2.)  He was sentenced to serve an indeterminate term of 25 years to life plus 24 years.

8          Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth

9  DCA").  In a reasoned decision, the Fifth DCA reversed the conviction on count four, to wit,

10  commission of a lewd or lascivious act without force by placing hand over mouth in violation of

11  Cal. Penal Code § 288(a), for insufficient evidence, and reduced the determinate term from 24

12  years to 16 years.  People v. Ramirez, No. F067581, 2015 WL 1736322, *15 (Cal. Ct. App. Apr.

13  14, 2015).  On all other counts, the judgment was affirmed.  Id.  Petitioner next filed a petition for

14  review in the California Supreme Court.  The petition was summarily denied.  (LD[2] 15,16.)

15          On October 1, 2015, Petitioner filed the instant Petition for Writ of Habeas Corpus in this

16  Court.  (Doc. No. 1).  Respondent filed an answer on March 1, 2016.  (Doc. No. 24).  Petitioner

17  did not file a traverse.

18  **II.     FACTUAL BACKGROUND**

19          The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[3]:

20      Defendant lived with his brother's family in Dinuba for several years. C.G. (born
21      1996) was his brother's stepdaughter. In 2013, C.G. was 16 years old when she
        testified in this case that defendant sexually molested her when she was a child.

22      ***The Swimsuit Incident (Count I)***

23      C.G. testified she was five or six years old when defendant molested her for the
24      first time. Defendant entered her bedroom while she was changing a swimsuit.
        Defendant pulled down her swim trunks. C.G. told him to stop but he did not.
25      Defendant put his penis in her "butt," and it hurt.

26      C.G. testified that defendant "put his penis in [her] butt" approximately 20 times

27  _____
    [2] "LD" refers to the documents lodged with the Court by Respondent on March 1, 2016.
    [3] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).
28  Therefore, the Court will rely on the Fifth DCA's summary of the facts.  Moses v. Payne, 555 F.3d 742, 746 (9th Cir.
    2009).

between the time she was five or six years old to when she was nine or 10 years old. These molestations occurred in the various houses where the family lived during that period. No one else was present when these incidents happened. [N.1]

> [N.1] On cross-examination, C.G. was impeached with her prior statement to the police that defendant sodomized her one time; she did not tell the police that it happened 20 times.

Defendant was charged and convicted of count I, commission of a forcible lewd act upon a child under the age of 14 years (Pen.Code, § 288, subd. (b)(1)), [N.2] committed between June 24, 2001, and June 23, 2003.

> [N.2] All further statutory citations are to the Penal Code unless otherwise indicated.

### The Nighttime Incident (Counts II, III, and IV)

C.G. testified about another incident which occurred when she was 10 years old and in the fourth grade. The incident happened at night in the family house. Her parents were at a wrestling match, and her grandmother and sister were asleep in another room.

C.G. testified she was asleep in her bedroom, the lights were off, and she was lying on her stomach. No one else was in her room when she went to sleep. However, she felt someone turn her over onto her back. She woke up and saw defendant. Defendant pulled off her pajamas and lowered his pants. C.G. told defendant to stop, but he did not say anything to her. Defendant put his penis in her vagina. C.G. started to yell and defendant covered her mouth with his hand. Defendant moved up and down at least three times. C.G. testified defendant was "forceful," and it hurt. When defendant finally stopped, C.G. went into the bathroom and found blood in her underwear.

Based on C.G.'s testimony about this incident, defendant was charged with committing three offenses between March 1 and June 23, 2007: Count II, sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a)); and counts III and IV, committing a forcible lewd act on a child under 14 years (§ 288, subd. (b)(1)). [N.3] The information alleged that count III was based on "penis to vagina," and count IV was based on "hand to mouth."

> [N.3] The offense of committing a lewd or lascivious act by force or duress upon a child 14 years of age or younger, in violation of section 288, subdivision (b)(1), is also described as "aggravated lewd conduct" or committing a "forcible lewd act." (*See, e.g., People v. Soto* (2011) 51 Cal.4th 229, 242, 248; *People v. Griffin* (2004) 33 Cal.4th 1015, 1018–1019; *People v. Perez* (2013) 214 Cal.App.4th 49, 54.)

Defendant was convicted as charged in counts II and III. As to count IV, he was found not guilty of the charged offense of committing a forcible lewd act in count IV, based on putting his hand over her mouth, but convicted of the lesser included offense of committing a lewd act upon a child under the age of 14 years without force (§ 288, subd. (a)). [N.4]

> [N.4] In issue I, post, we will address defendant's argument that his conviction in count IV for committing a lewd act by putting his hand over C.G.'s mouth must be reversed for insufficient evidence of sexual

3

gratification. In issue III, post, we will address defendant's argument that his conviction in count II for sexual intercourse must be reversed for inconsistencies between the information, the trial evidence, and the instructions.

### The Homework Incident (Counts V and VI)

C.G. testified about another incident which occurred in the family house when she was 11 years old. It happened when she was in her bedroom in the daytime. C.G. was lying on her stomach on her bedroom floor and doing her homework. No one else was home. Defendant walked in, grabbed her bottom, and started to pull down her pants. C.G. told him to stop or she would tell her parents. Defendant said he would kill her family if she told anyone. C.G. became frightened. Defendant pulled down her pants and put his penis in her vagina. C.G. testified he was "very aggressive," and it hurt.

Based on this incident, defendant was charged and convicted of counts V and VI, committing a forcible lewd act on a child under 14 years (§ 288, subd. (b)(1)), between June 24, 2007, and June 23, 2008. The information alleged count V was based on "hand to buttocks"; and count VI was based on "penis to vagina." [N.5]

> [N.5] In issue II, post, we will address defendant's claim that his conviction in count V must be reversed because of insufficient evidence of force and sexual gratification when he grabbed C.G.'s buttocks.

### C.G. Discloses the Molestations

C.G. testified she did not tell anyone that defendant was molesting her at that time because she was scared "he would do something."

When she was 13 years old, C.G. told her sister, C.R., what happened in detail.

C.G. testified that when she was 15 years old, she was ditching school, and her mother was going to take her to the doctor. She decided to tell her mother that defendant had molested her "because I knew there was going to be scarring. I didn't want her to find [out] that way."

### C.G.'s Statement to the Police

On June 5, 2012, C.G.'s mother contacted the Dinuba Police Department.

On June 6, 2012, Detective Jorge Quintero interviewed C.G., who said she thought he was there to talk about "her rape," in the singular. C.G. talked about one molestation, which happened when she was home with her grandmother, and said it was the "first" time. She said she was 10 years old when defendant put his penis in her vagina for the first time. She said defendant put his hand over her mouth to prevent her from screaming and said defendant never touched her body with his hands. C.G. said her parents were at a wrestling match that night, and her grandmother and younger sister were sleeping in another room when the first incident happened.

Detective Quintero asked whether there was a second incident. C.G. said yes, and that the second incident happened when she was 11 years old. C.G. said she had come home from school and was doing her homework. Defendant again put his penis in her vagina. C.G. said her mother and older siblings had gone to Visalia

that day, and the younger children were swimming outside.

Detective Quintero asked C.G. whether there was another incident. C.G. said there was a "third" time when defendant put his penis in her "butt" when she was five or six years old. Quintero did not ask C.G. how many times he sodomized her, and she did not mention any additional incidents. C.G. said defendant told her not to tell anyone about the incidents.

### Defendant's Post arrest Statement

On June 7, 2012, Detective Quintero arrested defendant. Quintero conducted an interview in Spanish at the police department. Defendant was advised of and waived his constitutional rights. Defendant said he was a field laborer. Defendant never acted confused or indicated he did not understand Quintero's questions.

Detective Quintero asked defendant if he knew why he was there. Defendant thought it was about traffic tickets. Quintero said something specific happened when he was living with his relatives. Defendant said he used to live with his brother's family. Defendant thought it was about the time he disciplined his nephews by hitting them. Quintero said no.

Detective Quintero asked defendant about his nieces and said they were accusing him of something. Defendant asked if they accused him of hitting them. Quintero said no, it was something different. Defendant said he had no idea. Quintero said it was about one little girl and asked what happened. Defendant said nothing happened.

Detective Quintero told defendant he did something to one of the little girls, and asked if he touched one of them. Quintero said he knew it happened three times, and asked defendant what he had to say about it. Defendant asked if he meant that he groped her. Quintero replied that "sexual abuse" was the word for what happened. Defendant again said nothing happened.

Detective Quintero asked defendant to "think about what happened" with C.G. Defendant said other people lived at the house. Quintero said there was more that happened. Defendant said: "'Well I just gave her a kiss on the mouth and that is all.'" Quintero told him to tell the truth and give the details.

Defendant said he only kissed C.G. on the mouth, and his "hand might have slipped." Detective Quintero asked for more details. Defendant said when C.G. was 10 years old, she wanted defendant to kiss her, and he did. Defendant said that C.G. asked him into her bedroom. She locked the door, pulled defendant toward her, and grabbed his penis. Defendant said he went along with C.G.'s advances, and he put his penis in her vagina. Defendant said he ejaculated on the floor. Quintero asked if there was any blood. Defendant said C.G. went into the bathroom, and he became scared when he noticed she was bleeding.

Defendant also said he kissed C.G.'s "butt cheeks" four times, and kissed her vagina five times. Defendant claimed he put his penis in her vagina only once. However, defendant remembered that he also put his penis in her vagina on two separate occasions when she was eight or nine years old.

Detective Quintero asked defendant if he placed his penis in her "butt" when C.G. was five or six years old. Defendant said she was eight or nine years old "when it occurred." Quintero asked how many times that happened. Defendant initially said

it happened eight or nine times. As the interview continued, defendant clarified it happened twice.

Detective Quintero asked defendant if he placed his fingers inside her body. Defendant said no. Quintero asked defendant if he touched C.G.'s sister, C.R., or any other children. Defendant said no.

Defendant said he "chose" C.G. because she was "flirtatious" when she was 10 years old, and she "played a lot and [he] described that she would jump on him and climb all over him...." Detective Quintero asked defendant if he knew it was a crime for a man to have sex with a little girl that age. Defendant said he knew it was wrong, and it was a crime. Quintero asked how he felt about it. Defendant said he was regretful.

### C.G.'s Relationship with Defendant's Brother

C.G. testified she was interviewed by the police in early June 2012, and she disclosed defendant's molestations. On cross-examination, C.G. admitted that later in June 2012, she began an intimate relationship with R.R., defendant's other brother, who was 19 or 20 years old. She was 15 years old when she started the relationship. C.G. testified that she was not involved with R.R. when she was ditching school, when she told her mother about defendant's molestations, or when she gave her statement about defendant to the police. C.G. admitted she hid her relationship with R.R. from her family, and she did not want them to know about it. Her family eventually learned about the relationship when her sister found out.

Ramirez, 2015 WL 1736322, at *1–4.

## III.    DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

6

B.      Legal Standard of Review

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

C.      Review of Petition

The petition presents the following grounds for relief: 1) The variance between the charging document, jury instructions and verdict forms on count two violated Petitioner's constitutional rights under the Sixth and Fourteenth Amendments; and 2) The evidence was insufficient to support Petitioner's conviction for lewd conduct for the act of "hands to buttocks" in count five, when the act was inseparable from the incident of sexual intercourse for which Petitioner was convicted in count six.

*1.  Variances in Allegations*

a.  State Court Decision

Petitioner raised this claim in the state courts.  The Fifth DCA provided the last reasoned decision and rejected the claim as follows:

> Based on C.G.'s testimony about the "nighttime" molestation in her bedroom, defendant was charged with count II, a violation of section 288.7, subdivision (a), and the jury convicted him of sexual intercourse with a child 10 years of age or

younger in violation of that section.

Defendant contends his conviction in count II must be reversed because of variances between the allegations in the information, the instructions, the verdict form, and the trial evidence as to whether he was charged and convicted of sexual intercourse or sodomy. As we will explain, there was no variance or confusion between the trial evidence and defendant's conviction in count II.

### A.   The Charge and the Information

Section 288.7, subdivision (a) states:

> "Any person 18 years of age or older who engages in *sexual intercourse or sodomy* with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 25 years to life." (Italics added.)

The information alleged as to count II that defendant committed "the crime of *sex/sodomy* with a child under 10" in violation of section 288.7, subdivision (a), when he engaged "in sexual intercourse *and* sodomy" with C.G. (Italics added.)

At the beginning of trial, the court read the charges to the jury and stated that defendant was charged in count II "with the crime of *sexual sodomy* with a child under 10, in violation of Penal Code *Section 299.7(a)* ... [*sic*]" [N.6] (Italics added.)

> [N.6]  The court erroneously cited "section 299.7" instead of "section 288.7." Section 299.7 authorizes the Department of Justice to dispose of unused forensic evidence samples under certain circumstances.

### B.   The Trial Evidence and Closing Argument

As set forth above, the evidence in support of count II was based on C.G.'s testimony about the nighttime incident in her bedroom, when defendant turned her over, lowered her clothing, muffled her screams, and performed an act of intercourse. C.G. never testified that defendant sodomized her during that incident.

In closing argument, the prosecutor explained that count II alleged the offense of "sexual intercourse" with a minor 10 years of age or younger, and that it was based on C.G.'s testimony about the first time defendant committed an act of intercourse in her bedroom and muffled her screams for help. The prosecutor further explained that count III, committing a forcible lewd act, dealt "with that same instance too," and count IV was based on when "he put his hand on her mouth."

### C.   The Instructions and Verdict Form

Also as to count II, the jury was instructed with CALCRIM No. 1127, that defendant was charged with "engaging in sexual intercourse" with a child 10 years of age or younger. The People had to prove defendant "engaged in an act of sexual intercourse with C.G.," and "sexual intercourse" meant "any penetration, no matter how slight, of the vagina or genitalia by the penis."

According to the verdict form, the jury found defendant guilty "as charged in Count 2 of the Information, *as to the crime of sexual intercourse* with a child 10 years of age or younger in violation of Penal Code section 288.7(a), a felony,

against C.G., to wit: penis in vagina." (Italics added.)

### D.  Analysis

Defendant contends his conviction in count II must be reversed because of variances between the charge and his conviction. The alleged variance was based on the language of the information and how the court read the charge. Section 288.7, subdivision (a) may be violated by the commission of "sexual intercourse or sodomy." The information alleged in count II that defendant violated section 288.7, subdivision, but defined the offense as "sex/sodomy." When the court read the charges to the jury, it stated that count II alleged "the crime of *sexual sodomy* with a child under 10, in violation of Penal Code *Section 299.7(a)* [*sic*]...." (Italics added.)

Defendant has "forfeited his right to object to an alleged variance between the pleading and the proof by failing to raise the objection in the trial court. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 427.) More importantly, defendant has failed to show the variance was of such a substantial character as to have misled him in the preparation of his defense. (*Id*. at pp. 427–428.)

"'A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court.' [Citations.]" (*People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1256.) "The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. [Citation.]" (*Ibid*.; *see also People v. Jones* (1997) 58 Cal.App.4th 693, 710; *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272; *People v. Paul* (1998) 18 Cal.4th 698, 703.) "[T]echnical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice. [Citations.]" (*People v. Webster* (1991) 54 Cal.3d 411, 447, fn. omitted; in accord, *see People v. Jones, supra*, at p. 710; and *People v. Camacho, supra*, at pp. 1272–1273.)

The jury's intent to convict defendant of "sexual intercourse" with a child 10 years of age or younger, in violation of section 288.7, subdivision (a), was unmistakable. The People clearly elected that count II was based on the nighttime incident in C.G.'s bedroom, and C.G. testified that defendant performed an act of intercourse as he muffled her cries for help. C.G. never described an act of sodomy during this incident.

The jury was instructed that count II was based on defendant's act of sexual intercourse, and the verdict form similarly stated that defendant was convicted in count II of performing an act of sexual intercourse in violation of section 288.7, subdivision (a).

It is important to note that defendant was separately charged with count I, commission of a forcible lewd act, based on C.G.'s testimony that he entered her bedroom, lowered her swimsuit, and sodomized her when she was five or six years old, and that he committed similar acts for several years thereafter. In closing argument, the prosecutor clearly elected that count I was based on C.G.'s description of the incident when she was five years old, and defendant lowered her swim trunks and sodomized her. The verdict form for count I also clarified that his conviction for committing a forcible lewd act was based on sodomy and not intercourse. There was thus no confusion between the evidence and the verdicts for counts I and II.

1  People v. Ramirez, 2015 WL 1736322, at *10–12.

2          b.  Procedural Bar

3        As an initial matter, Respondent contends that the claim is procedurally barred because no

4  contemporaneous objection was made at trial.  The Court agrees.

5        A federal court will not review a claim of federal constitutional error raised by a state

6  habeas petitioner if the state court determination of the same issue "rests on a state law ground

7  that is independent of the federal question and adequate to support the judgment."  Coleman v.

8  Thompson, 501 U.S. 722, 729 (1991).  This rule also applies when the state court's determination

9  is based on the petitioner's failure to comply with procedural requirements, so long as the

10  procedural rule is an adequate and independent basis for the denial of relief.  Id. at 730.  For the

11  bar to be "adequate," it must be "clear, consistently applied, and well-established at the time of

12  the [ ] purported default."  Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997).  For the bar to

13  be "independent," it must not be "interwoven with the federal law."  Michigan v. Long, 463 U.S.

14  1032, 1040-41 (1983).  If an issue is procedurally defaulted, a federal court may not consider it

15  unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

16  alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

17  fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

18        In Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002), the Ninth Circuit held that

19  California's contemporaneous objection doctrine is clear, well-established, and has been

20  consistently applied when a party has failed to make any objection to the admission of evidence.

21  In Vansickel v. White, 166 F.3d 953 (9th Cir. 1999), the Ninth Circuit held that the

22  contemporaneous objection bar is an adequate and independent state procedural rule.  It is

23  undisputed that Petitioner did not challenge the variances during trial.  Further, Petitioner has not

24  demonstrated cause for the default or actual prejudice resulting therefrom.  Thus, the claim is

25  procedurally defaulted.

26          c.  Federal Standard

27        The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

28  enjoy the right ... to be informed of the nature and cause of the accusation...."  This guarantee is

1    applicable to the states through the due process clause of the Fourteenth Amendment.  In re

2    Oliver, 333 U.S. 257, 273–74 (1948).  A criminal defendant has a fundamental right to be clearly

3    informed of the nature and cause of the charges in order to permit adequate preparation of a

4    defense.  See Lopez v. Smith, __ U.S. __, __, 135 S.Ct. 1, 4 (2014) ("a defendant must have

5    adequate notice of the charges against him."); Cole v. Arkansas, 333 U.S. 196 (1948); Gray v.

6    Raines, 662 F.2d 569, 571 (9th Cir.1981) ("A person's right to reasonable notice of a charge

7    against him, and an opportunity to be heard in his defense—a right to his day in court—are basic

8    in our system of jurisprudence....").

9            d.   Analysis

10           As noted by the appellate court, the information charged Petitioner in count two with

11   "sexual intercourse/sodomy" when he engaged in "sexual intercourse and sodomy."  At the

12   beginning of trial, the court read the charges to the jury and stated defendant was charged in count

13   two with "sexual sodomy."  During trial, however, the evidence in support of count two showed

14   only an act of sexual intercourse.  There was no evidence of sodomy with respect to the nighttime

15   bedroom incident.  During closing the prosecutor argued that Petitioner was guilty of count two

16   for his act of sexual intercourse.  The jury was then instructed that Petitioner was charged with

17   "engaging in sexual intercourse" with a minor ten years of age or younger.  The jury returned a

18   verdict of guilty as to count two for the "crime of sexual intercourse with a child 10 years of age

19   or younger."

20           It is plain from the record that a fairminded jurist could have found that Petitioner knew

21   he was facing conviction on a theory of sexual intercourse instead of sodomy.  The evidence, the

22   prosecutor's arguments, and the jury instructions made it clear that a guilty verdict was sought on

23   count two solely on the theory of sexual intercourse.  It cannot be said that no reasonable jurist

24   could find that Petitioner was not adequately apprised of the charges against him in count two

25   such that he could prepare an adequate defense.

26           Moreover, there is no Supreme Court precedent which would establish the specific rule

27   Petitioner would require to prevail.  As noted by the Supreme Court in Lopez v. Smith, its prior

28   cases "stand for nothing more than the general proposition that a defendant must have adequate

11

notice of the charges against him." 135 S.Ct. at 4. Petitioner was initially put on notice by the information that he was being charged with sexual intercourse/sodomy. Petitioner fails to show how such notice was inadequate. To be sure, he fails to show that he was tried and convicted on a theory unknown to him during trial proceedings. Therefore, the claim should be **DENIED**.

### 2. *Insufficient Evidence*

Next, Petitioner argues that the evidence was insufficient to support Petitioner's conviction for lewd conduct for the act of "hands to buttocks" in count five, when the act was inseparable from the incident of sexual intercourse for which Petitioner was convicted in count six and there was no evidence of specific intent for sexual arousal.

#### a. State Court Decision

The Fifth DCA denied this claim as follows:

> C.G. testified defendant molested her during another incident when he entered her bedroom while she was doing her homework, grabbed her buttocks, lowered her pants, and performed an act of intercourse. Based on this incident, defendant was charged with counts V and VI, commission of a forcible lewd act upon a child under 14 years (§ 288, subd. (b)(1)). The information alleged that count V was based on "hand to buttocks" and count VI was based on "penis to vagina." Defendant was convicted of both counts.

> Defendant contends his conviction for committing a forcible lewd act in count V, based on "hand to buttocks," must be reversed for insufficient evidence because he did not have any sexual intent when he touched her buttocks, and that touching was part of the force required to prove count VI, when he subsequently performed the act of intercourse during the same incident.

> We have already addressed the relevant legal principles in section I, *ante*. We turn to C.G.'s testimony about the "homework" molestation.

> **A. C.G.'s Testimony**

> C.G. testified the incident which was the basis for counts V and VI occurred when she was doing homework in her bedroom and no one else was home.

> > "Q. What happened next?

> > "A. I was doing my homework on the floor on my stomach and I felt the defendant pull me up from my hips.

> > "Q. *So did he grab your bottom*?

> > "A. Yeah.

> > "Q. So did he do this while you were laying on the floor doing your homework?

12

"A. Yeah.

"Q. And did he pick you up?

"A. No.

"Q. *What did he do after he grabbed you by the bottom?*

"A. *He started to pull my pants down again.*

"Q. He grabbed you by the bottom, was it with his hands?

"A. Yeah. [¶] ... [¶]

"Q. After he started pulling down your pants this time did you say anything to him?

"A. Yeah, I told him to stop or I was going to tell my mom and dad.

"Q. And then what did the defendant do next?

"A. And then he said if I did he would kill my whole family.

"Q. Were you afraid?

"A. Yeah." (Italics added.)

C.G. testified that after defendant made the threats, he performed the act of intercourse.

As noted above, defendant was charged with two counts of committing forcible lewd act. The information alleged count V was based on "hand to buttocks" and count VI was based on "penis to vagina." In closing argument, the prosecutor said count V was based on "the time when he first grabbed her on the bottom" and count VI was based on "sexual intercourse."

**B. Defendant's Sexual Intent**

We find defendant's conviction in count VI for committing a forcible lewd act is supported by substantial evidence that he touched C.G.'s buttocks with the requisite sexual intent. As we discussed in issue I, *ante*, a violation of section 288, subdivisions (a) or (b) requires evidence that the touching was "accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim. [Citation.]" (*In re R.C., supra*, 196 Cal.App.4th at p. 749, italics in original.) Such a touching may occur over the victim's clothing, it need not be sexual in character, and it may involve "'any part' of the victim's body." (*Martinez, supra*, 11 Cal.4th at p. 444.) A defendant's act of grabbing or touching a child's buttocks over her clothing may certainly constitute a lewd touching with the requisite sexual intent. (See, e.g., *People v. Jimenez* (2002) 99 Cal.App.4th 450, 455; *People v. Gilbert, supra*, 5 Cal.App.4th at p. 1380; *People v. Bolander* (1994) 23 Cal.App.4th 155, 161.) The relevant factors to determine intent include the nature and manner of the touching and the relationship of the parties. (*In re R.C., supra*, 196 Cal.App.4th at p. 750.) Prior to this incident, defendant had sexually assaulted C.G. numerous times, beginning with his repeated acts of sodomy which started when she was five years old and continued in subsequent years, and the

13

prior forcible lewd act of intercourse when she was 10 years old. Indeed, C.G. testified that she knew exactly what defendant intended when he touched her during this incident, and told him to stop or she would tell her parents.

In addition, there is substantial evidence that defendant's act of grabbing C.G.'s buttocks with his hands, as charged in count V, was a separate lewd act from his subsequent act of intercourse, which was the basis for count VI. "[A] separate violation of section 288 can be based on each distinct lewd act committed against the victim on the same occasion...." (*People v. Scott* (1994) 9 Cal.4th 331, 348, fn. 10.)

### C. Force or Duress

There is also substantial evidence of force to support defendant's conviction for committing a *forcible* lewd act by grabbing C.G.'s buttocks. The force required by section 288, subdivision (b) requires evidence that the perpetrator used force "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto, supra*, 51 Cal.4th at p. 242.) "*According to the majority of courts, this includes acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves*. (See, e.g., *People v. Bolander* [, *supra*,] 23 Cal.App.4th [at pp.] 160–161 ... ['defendant's acts of overcoming the victim's resistance to having his pants pulled down, bending the victim over, and pulling the victim's waist towards him' constituted forcible lewd conduct]; *People v. Neel* [ (1993) ] 19 Cal.App.4th [1784,] 1790 ...; *People v. Babcock* [ (1993) ] 14 Cal.App.4th [383,] 388 [force element met where the defendant grabbed the victims' hands and made them touch his genital area].)" (*People v. Alvarez, supra*, 178 Cal.App.4th at p. 1005, italics added.)

C.G. testified that when defendant initially entered her bedroom, he did two things to her: "I felt defendant pull me up from my hips," and defendant then "grabbed" her buttocks. C.G. was laying on her stomach, and defendant could have touched or grabbed her buttocks without pulling her up in such a manner. Based on C.G.'s testimony, defendant engaged in force substantially different from that required to perform the sexual act of grabbing her buttocks when he pulled her up by her hips.

Defendant argues the act of grabbing C.G.'s buttocks was part of the force he used to commit the forcible act of sexual intercourse separately charged in count VI, instead of supporting a *separate* conviction for aggravated lewd conduct in count V for grabbing her buttocks with the requisite sexual intent. We disagree because there is evidence of a separate act of "force" or "duress" to support his conviction in count VI for aggravated lewd conduct. (§ 288, subd. (b).) "'[D]uress means' "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." [Citations.]' [Citation.] '"The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress." [Citation.]' [Citations.] 'Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.' [Citations.]" (*People v. Veale* (2008) 160 Cal.App.4th 40, 46–47.)

There is overwhelming evidence of an act of "duress" to support defendant's conviction for aggravated lewd conduct in count VI, separate and apart from grabbing her buttocks: C.G. testified defendant lowered her pants; she told him to

14

1  stop or she would tell her parents; defendant replied that he would kill her family if
2  she revealed anything; C.G. became frightened; and defendant committed the act
   of intercourse.

3  Defendant's conviction in count VI for aggravated lewd conduct was thus
   independently based on the duress from his threat to kill her family and his act of
4  intercourse, it was not based on the same "force" which was the basis for grabbing
   her buttocks in count V, and there is substantial evidence of both force and sexual
5  gratification to support his separate conviction in count V.

6  People v. Ramirez, 2015 WL 1736322, at *8–10.

7        b.  Federal Standard

8        The law on sufficiency of the evidence is clearly established by the United States Supreme

9  Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S.

10  307, the test on habeas review to determine whether a factual finding is fairly supported by the

11  record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the

12  prosecution, any rational trier of fact could have found the essential elements of the crime beyond

13  a reasonable doubt."  Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781

14  (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a

15  reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.

16  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

17        If confronted by a record that supports conflicting inferences, a federal habeas court "must

18  presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any

19  such conflicts in favor of the prosecution, and must defer to that resolution."  Id. at 326.

20  Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a

21  conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

22        After the enactment of the AEDPA, a federal habeas court must apply the standards of

23  Jackson with an additional layer of deference.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.

24  2005).  In applying the AEDPA's deferential standard of review, this Court must presume the

25  correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson,

26  477 U.S. 436, 459 (1986).

27        In Cavazos v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court

28  further explained the highly deferential standard of review in habeas proceedings, by noting that

15

1  Jackson

2      makes clear that it is the responsibility of the jury - not the court - to decide what
       conclusions should be drawn from evidence admitted at trial. A reviewing court
3      may set aside the jury's verdict on the ground of insufficient evidence only if no
       rational trier of fact could have agreed with the jury. What is more, a federal court
4      may not overturn a state court decision rejecting a sufficiency of the evidence
       challenge simply because the federal court disagrees with the state court. The
5      federal court instead may do so only if the state court decision was "objectively
       unreasonable."
6
       Because rational people can sometimes disagree, the inevitable consequence of
7      this settled law is that judges will sometimes encounter convictions that they
       believe to be mistaken, but that they must nonetheless uphold.
8

9  Id. at 3.

10             c.      Analysis

11      Petitioner fails to establish that no rational trier of fact could have found the essential

12  elements of the crime beyond a reasonable doubt.  As noted by the appellate court, there was

13  testimonial evidence from the victim that Petitioner "grabbed her buttocks."  From this, a rational

14  trier of fact could have concluded that Petitioner committed the lewd act of putting his hands on

15  her buttocks.  There is evidence from which a rational trier of fact could have concluded that this

16  lewd act was accompanied by force, to wit, Petitioner's act of picking up the victim by her hips.

17  Thus, Petitioner fails to show that there was insufficient evidence supporting count five.

18      After committing the above act, Petitioner attempted to pull down the victim's pants.

19  When she demanded he stop or she would tell her parents, he threatened to kill her family.  The

20  victim testified she became frightened and Petitioner then committed the act of intercourse.  Thus,

21  evidence was presented from which the jury could have found Petitioner committed the act of

22  intercourse, and evidence was presented that he accomplished such act by means of duress.

23  Therefore, Petitioner fails to demonstrate that there was insufficient evidence supporting count

24  six.  The claim should be denied.

25  **IV.    RECOMMENDATION**

26      Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus

27  (Doc. 1) be **DENIED** with prejudice.

28      This Findings and Recommendation is submitted to the United States District Court Judge

16

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated:   __January 12, 2017__                    _____/s/ Jennifer L. Thurston__
                                               UNITED STATES MAGISTRATE JUDGE

17